IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **ACTION MAILING CORPORATION D/B/A ACTION MAILING & PRINTING SOLUTIONS**<br>3165 W. Heartland Drive<br>Liberty, Missouri 64068<br><br>     **Plaintiff**<br><br>v.<br><br>**WILLIAM J. MCCARTHY**<br>1006 Cameron Street<br>Alexandria, Virginia 22314<br><br>     and<br><br>**WILLIAM J. MCCARTHY & ASSOCIATES, INC.**<br>1006 Cameron Street<br>Alexandria, Virginia 22314<br><br>Serve: William J. McCarthy III<br>          1006 Cameron Street<br>          Alexandria, Virginia 22314<br><br>     and<br><br>**STATE DEPARTMENT WATCH, LTD**<br>4445 Corporation Lane, Suite 264<br>Virginia Beach, Virginia 23463<br><br>Serve: Northwest Registered Agent LLC<br>          4445 Corporation Lane, Suite 264<br>          Virginia Beach, Virginia 23463<br><br>     and | Case No. 1:19-cv-01404-AJT-MSN |

**AMERICANS CARE, INC.**
315 Riding Trail Court
Leesburg, Virginia 20176

Serve: Nensi Fiorenini
      315 Riding Trail Court
      Leesburg, Virginia 20176

  **Defendants**

## SECOND AMENDED COMPLAINT

The Plaintiff, Action Mailing Corporation ("Action Mailing"), by and through its attorneys, Janet M. Nesse, Aaron D. Neal and McNamee, Hosea, Jernigan, Kim, Greenan & Lynch, P.A., sues the above-named Defendants, and says:

### Parties & Jurisdiction

1. Action Mailing is a Missouri corporation engaged in the business of preparing mass-mailings to individuals on behalf of third parties. Action Mailing's principal place of business is in Liberty, Missouri. For diversity purposes, Action Mailing is a citizen of Missouri.

2. William J. McCarthy is believed to be a citizen of the United States, domiciled in Fairfax County, Virginia and the owner of William J. McCarthy & Associates, Inc. ("WJMA"). For diversity purposes, McCarthy is believed to be a citizen of Virginia.

3. WJMA is a Virginia corporation with its principal place of business in Alexandria, Virginia. WJMA is in the direct marketing business. For diversity purposes, WJMA is believed to be a citizen of Virginia.

4. State Department Watch, LTD ("SDW") is a Virginia corporation which appears to operate primarily out of Washington, DC. The mailings created and mailed by Action

Mailing for SDW requested that the respective recipients send contributions (i.e., money) to a post office box in Washington, DC. SDW's website identifies its "National Headquarters" as being located at a Washington, DC post office box (P.O. Box 65398). SDW's filings with the Virginia State Corporation Commission identify a principal office address of 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia 23462. SDW is believed to be in the business of collecting money from individuals to support various political causes. For diversity purposes, SDW is believed to be a citizen of Virginia and potentially the District of Columbia.

5. Because SDW has filed a Chapter 7 bankruptcy petition [*See* ECF No. 48] this amended complaint is directed solely at the other defendants and is not an attempt to seek relief against SDW, as the claims against SDW (and the deadline for amending those claims under ECF No. 47) are presently stayed[1] pursuant to 11 U.S.C. §362(d). To the extent that this amendment makes reference to SDW in the new factual recitations, those references are made solely to clarify the allegations of the complaint such that Action Mailing can pursue the other defendants. If and when the stay is lifted, to the extent SDW has not been discharged, Action Mailing reserves the right to amend the complaint further with respect to SDW as is necessary to address the court's ruling at ECF No. 47.

6. Americans Care, Inc. ("ACI") is a terminated Virginia corporation which appears to operate primarily out of Washington, DC. The mailings created and mailed by Action Mailing for ACI requested that the respective recipients send contributions (i.e., money) to a post office box in Washington, DC. ACI's facebook page identifies it as being a

---

[1] Action Mailing reserves the right to challenge the application of the automatic stay as to SDW. It appears that the bankruptcy petition was filed on behalf of a State Department Watch LTD that is a California corporation. The SDW that is a defendant in this case is a Virginia entity. If and how the automatic stay applies in this scenario is not presently clear.

nonprofit Virginia corporation. ACI's filings with the Virginia State Corporation Commission identify a principal office address of 315 Riding Trail Court, Leesburg, Virginia 20176. ACI is believed to be in the business of collecting money from individuals to support various political causes. For diversity purposes, ACI is believed to be a citizen of Virginia and potentially the District of Columbia.

7. Venue is proper in this court because a substantial part of the events giving rise to Action Mailing's claims took place in this district.

8. Jurisdiction is proper in this court because the parties are completely diverse and the amount of damages sought by Action Mailing exceeds $75,000.00.

## The relationship between WJMA and SDW

9. Sometime prior to August 2015, SDW entered into an oral agreement with WJMA, for the mutual benefit and profit of both parties, setting out the terms of their business relationship / joint venture / partnership. Specifically, SDW provided political ideas and issues, and WJMA used those ideas and the name of SDW and various SDW "projects" for the purposes of soliciting political donations via direct mail marketing campaigns. WJMA would then contract with vendors to mail out SDW's content to individuals, with WJMA and SDW sharing in the proceeds of any donations. The proceeds of the direct mail marketing campaigns was to be deposited in the escrow account established for the partnership / joint venture, which was controlled by an escrow agent. Each of the parties had a voice in the control or management of the joint business venture, including review and approval of expenses, content control, etc.

10. Some of SDW's "projects" included American Minuteman Project, Tea Party Command, the Tea Party Campaign, the Tea Party, the Tea Party Guard, Minute Man Project, 1776 Nation and G.I. America.

11. The oral agreement between WJMA and SDW was sometimes referred to as the "OM Agreement" or "DM Agreement".

12. SDW entered into a series of escrow agreements starting in 2017 which further defined the terms of the relationship between WJMA and SDW. These escrow agreements identified various third parties that would receive, hold and disburse the funds received as a result of the direct mail marketing campaigns described above:

   a. August 11, 2017 – SDW, The Tea Party, The Tea Party Campaign, Minute Man Project, 1776 Nation and GI America entered into an escrow agreement with Robert F. Singer, CPA. *See* Exhibit 1.

   b. October 22, 2019, American Minuteman Project (i.e. SDW) and WJMA and entered into an escrow agreement with "Riding Trail LLC". *See* Exhibit 2.

   c. October 22, 2019, 1776 Nation (i.e. SDW) and WJMA and entered into an escrow agreement with "Riding Trail LLC". *See* Exhibit 3.

   d. October 22, 2019, To Keep and Bear Arms (i.e. SDW) and WJMA and entered into an escrow agreement with "Riding Trail LLC". *See* Exhibit 4.

   e. October 22, 2019, SDW and WJMA and entered into an escrow agreement with "Riding Trail LLC". *See* Exhibit 5.

   f. October 22, 2019, Tea Party Campaign (i.e. SDW) and WJMA and entered into an escrow agreement with "Riding Trail LLC". *See* Exhibit 6.

13. WJMA signed the aforementioned escrow agreements on behalf of Riding Trail LLC. It is believed that Riding Trail LLC is a subsidiary of or related entity to WJMA and that Nensi Fiorenini, accountant for WJMA, is the accountant in control of the Riding Trail escrow account(s).

14. By virtue of the aforementioned agreements, WJMA and SDW had combined in a joint business enterprise for their mutual benefit and profit, with the express (or implied) understanding that they were to share in the profits and losses of their joint enterprise.

### The relationship between WJMA and ACI

15. It is believed that ACI is owned, controlled, or otherwise related to WJMA or the principals of WJMA.

16. Nensi Fiorenini is the resident agent of ACI.

17. Nensi Fiorenini is believed to be WJMA's accountant and the person running the escrow accounts relating to SDW.

18. S. Kelly McCarthy is believed to be an officer of ACI and the wife of William J. McCarthy.

19. ACI's website identifies several projects, including Senior Americans Association, The Sovereignty Project and American Presidential Task Force.

20. ACI admits in its Answer [ECF No. 34 at ₱5] that Action Mailing created and mailed items for ACI seeking political donations.

21. As is set forth more fully below, numerous orders were made by WJMA on behalf of ACI and its projects. Action Mailing fulfilled those orders.

**Action Mailing's Involvement with the Defendants**

22. In September 2017, a representative of WJMA contacted Action Mailing to contract for direct mailing services.

23. On October 11, 2017, WJMA placed its first order for direct mailing services with Action Mailing. WJMA was advised in advance of the cost for its order and agreed that the costs would be paid.

24. At the time the first order was placed and continuing thereafter, WJMA, SDW and ACI knew or reasonably should have known that they would not be able to pay for the orders that they had promised to pay.

25. WJMA and SDW did not have sufficient assets to cover the orders that were being made at the time they were made.

26. WJMA and SDW had contracted with other direct mail companies prior to Action Mailing. The direct mail marketing campaigns with the other direct mail companies failed to result in sufficient revenue to pay those direct mail companies, resulting in at least one lawsuit against WJMA and/or SDW and multiple unpaid vendors.

27. Despite having no ability to pay or any expectation of being able to pay for mailing services, WJMA and SDW agreed to order and continue ordering those services.

28. Over the following months, WJMA placed numerous orders for direct mailing services.

29. The orders fell into three basic categories: (1) orders made on behalf of SDW, (2) orders made on behalf of a fictitious, unregistered entity, and (3) orders made on behalf of a fictitious, unregistered entity which was identified as a "project" of SDW or ACI, but with the "project" being expressly identified as the principal, rather than SDW or ACI.

a. A sample of the first category of order (with sample invoice) is attached hereto as Exhibit 7.

   i. The total owed for SDW orders in category one is $39,491.09 – Order[2] Nos. 14492, 15328, 15477 (SDW).

b. A sample of the second category of order is attached hereto as Exhibit 8.

   i. The total owed for SDW "project" orders in category two is $194,962.01; consisting of:

      1. $75,191.43 – Order Nos. 13938, 14167, 14285, 14615, 14624, 15324 (Tea Party Command, a project of 1776 Nation);

      2. $36,892.17 – Order Nos. 15336, 15484, 14627 (The Tea Party Campaign);

      3. $36,709.38 – Order Nos. 13940, 14619, 14260, 15486 (Tea Party Guard, a project of 1776 Nation);

      4. $32,177.71 – Order Nos. 14447, 14613, 14625 (The Tea Party)

      5. $13,991.32 – Order Nos. 14623, 15329, 15483 (G.I. America).

c. Samples of the third category of order are attached hereto as Exhibit 9 (as to SDW) and Exhibit 10 (as to ACI).

   i. The total owed for SDW "project" orders in category three is $333.51 – Order Nos. 15485 (American Minuteman Project, a project of SDW).

   ii. The total owed for ACI "project" orders in category three is $62,620.04, consisting of:

---

[2] Each of the order numbers referenced herein covered multiple mailings – the 82 orders described elsewhere in the Complaint.

1. $22,463.06 - Order Nos. 14290, 14061, 14612, 14621 (American Presidential Task Force, a project of ACI);
2. $39,845.93 – Order Nos. 14291, 13948, 14611, 14622, 15327, 15481 (The Sovereignty Project, a project of ACI);
3. $311.05 – Order No. 14626 (Senior Americans Association, a project of ACI)

30. With respect to the first category of orders, SDW and ACI are liable either as disclosed principals of WJMA, or as joint venturers / partners with WJMA. WJMA is liable for the first category of orders as joint venturer / partner with SDW and ACI.

31. With respect to the second category of orders, SDW and ACI are liable as the owners of those unregistered entities and as joint venturers / partners with WJMA. WJMA is liable for the second category of orders as joint venturer / partner with SDW and ACI, or in the alternative, as the direct contracting party because Action Mailing could not discern the identity of the purported principal from the name of an unregistered, fictitious entity, as evidenced by the fact that invoices were directed to the project name even where SDW or ACI were also identified. *See* Exhibit 10.

32. With respect to the third category of orders, SDW and ACI are liable as the owners of those unregistered entities and as joint venturers / partners with WJMA. WJMA is liable for the third category of orders.

33. In total, the Defendants are liable in the following amounts:
    a. SDW - $234,786.61
    b. ACI - $62,620.04

    c.   WJMA & McCarthy - $ 297,441.59[3]

34. WJMA ordered mailing services for American Minuteman Project, Tea Party Command, 1776 Nation, The Tea Party Campaign, The Tea Party, Tea Party Guard and G.I. America, none of which exist as valid corporate entities or registered fictitious names.

35. Rather, a review of the mailings themselves seems to indicate that those were the names of "projects" supervised by SDW.

36. Similarly, WJMA placed orders for American Presidential Task Force, Senior Americans Association and The Sovereignty Project, none of which exist as valid corporate entities or registered fictitious names.

37. Those entities appear to be the names of "projects" supervised by ACI. It appears that ACI is no longer a legal entity in Virginia and is not believed to have legal existence in any other jurisdiction.

38. As orders were made, WJMA kept SDW and ACI updated on the expenses being incurred by Action Mailing and the need to pay those expenses out of the escrow funds held by the escrow agent. An examples of the regular updates to SDW is attached hereto as Exhibit 11.

39. SDW endorsed many of the invoices, approving the charges and the payment of same out of "donations" received as a result of the mailings. *See* Exhibit 5.

40. SDW and ACI received disbursements of funds out of the donations that were deposited in escrow.

41. At no time did SDW or ACI dispute WJMA's authority to enter into contracts or order services on their behalf or on behalf of their partnership / joint venture.

---

[3] This figure includes a $35.00 fee for a stop payment and a $0.06 payment that does not clearly apply to the amounts owed by other defendants.

42. Over 82 orders and hundreds of "mailings", Action Mailing sent out 1,143,170 pieces of mail for WJMA, SDW and ACI.

43. WJMA, SDW and ACI stopped paying invoices as they came due, with 192 mailings remaining unpaid.

44. On October 4, 2018 at 12:12 pm, Mr. McCarthy promised to get caught up on the past due payments, stating that "[s]horting postage caught up with us this week and we will be short.  I will endeavor to get back on track in the next couple of weeks and get the postage caught up as well."

45. Of the 192 mailings at issue, at least 80 were made, accepted, completed and invoiced after and in reliance upon the October 4, 2018 misrepresentation.

46. Mr. McCarthy made similar misrepresentations regarding payment via emails throughout October, November and December 2018.

47. Mr. McCarthy repeatedly promised to pay the invoices.  Mr. McCarthy verbally agreed to pay $20,000.00 per month to catch up, but did not do so.

48. On March 19, 2019 at 6:14 pm, Mr. McCarthy stated via email to Action Mailing that "[c]ash flow has been extremely spotty and postage checks have gone astray.  I will endeavor to increase payments over the next few weeks and get caught up as soon as possible."

49. Mr. McCarthy knew as of March 19, 2019 that WJMA and SDW did not have sufficient assets to pay the past due invoices and could not reasonably expect to receive enough revenue from future orders to cover either the past due invoices or the debts incurred for future orders.

50. McCarthy's misrepresentations were made in furtherance of the agreement between WJMA and SDW to order mailing services without the present or anticipated ability to pay for those services.

51. Of the 192 mailings at issue, at least 12 were made and accepted after and in reliance upon the March 19, 2019 misrepresentation (and the October 4, 2018 misrepresentation).

52. In a series of emails with SDW in April 2019, Mr. McCarthy expressly acknowledged the inability to pay Action Mailing, admitted that they had received no revenue at all for long periods, and stated that they should continue stringing Action Mailing along nonetheless. SDW apparently thought they only owed $91,000.00 as of then, but Mr. McCarthy acknowledged that their debt was greater.  Mr. McCarthy also acknowledged that they had no money for postage and would not be able to pay vendors (like Action Mailing) unless SDW came up with funds to pay for new postage.

53. On April 24, 2019, Mr. McCarthy acknowledged in an email to SDW that they had been sued by another vendor in 2018 and that SDW had demanded that WJMA pay $40,000.00 to resolve the claim.  As a result of that payment, as early as 2018 WJMA and SDW knew that they did not have sufficient funds to support their marketing efforts or pay vendors for future orders.

54. SDW's bankruptcy schedules show several hundred thousand dollars in debts owed to other direct mail companies and printers, including an acknowledged debt of $107,893.59 owed by SDW to Action Mailing.

55. Mr. McCarthy made those repeated misrepresentations to Action Mailing that he would catch up on past payments in a concerted effort to trick Action Mailing into continuing to

do work for WJMA and SDW, knowing that he, SDW and WJMA would neither catch up on the past due billing nor pay for the additional work.

56. Finally, after Action Mailing retained counsel, Mr. McCarthy asserted for the first time in a June 14, 2019 letter that WJMA was not responsible for the outstanding invoices because WJMA was acting as an agent for a disclosed principal.

57. Disclosing the existence of fictitious, unregistered, non-existent entities without providing Action Mailing with the ability to identify the legally existing parent entity is not disclosing a principal such that WJMA can avoid liability for its own orders and resulting debts.

58. WJMA is directly responsible for any orders placed on behalf of fictitious, unregistered "project" names.  Those orders total $194,962.01.

59. WJMA is directly responsible for the orders placed on behalf of SDW, as their relationship is more akin to a joint venture or partnership than a traditional principal-agent relationship.  Those orders total $39,491.09.

60. WJMA is directly responsible for order placed on behalf of ACI and SDW's projects, where the project was identified as the principal, due to either (1) inadequate disclosure of the principal or (2) the joint venture / partnership relationship between SDW and WJMA.  Those orders total $62,953.55.

### Count One – Fraud
### (William J. McCarthy & WJMA)

61. Action Mailing incorporates by reference all other averments in the Complaint.

62. William J. McCarthy made the orders and misrepresented that Action Mailing *would* be paid in the future for present and future orders, without any present intent to make

payments in the future and knowing that neither he nor the other Defendants would make payment in full in the future.

63. William J. McCarthy made those misrepresentations knowingly and maliciously to induce Action Mailing to provide products and services in the future in reliance upon those misrepresentation, and to purchase postage, to Action Mailing's detriment.

64. Action Mailing reasonably relied upon William J. McCarthy's misrepresentations in providing good and services, and purchasing postage, based on WJMA and Mr. McCarthy's promise to pay for future orders, which appears to have been done in furtherance of lulling Action Mailing into accepting additional work despite payments being arrears.

65. As a direct and proximate result of the fraud of WJMA and William J. McCarthy, Action Mailing has incurred damages in the amount of $297,441.59.

WHEREFORE, Action Mailing demands judgment in its favor and against WJMA and William J. McCarthy, jointly and severally, in the amount of $297,441.59, for punitive damages of $1,000,000.00, reasonable attorney's fees, and the costs of this action.

### Count Two – Breach of Contract
### (SDW, ACI and WJMA)

66. Action Mailing incorporates by reference all other averments in the Complaint.

67. Action Mailing, WJMA, SDW and ACIentered into contracts by which Action Mailing would prepare and mail direct mailings on behalf of the WJMA, SDW and ACI.

68. The contracts relating to work for SDW were entered into by WJMA as joint venturer or partner with SDW, making both SDW and WJMA jointly liable for those contracts. In the alternative, WJMA was acting as agent for SDW and was capable of binding SDW to the contracts.

69. The contracts relating to work for ACI were entered into by WJMA either as agent for ACI or as joint venturer or partner with ACI.

70. A material term of the contracts required the Defendants to compensate Action Mailing for the mailings and postage.

71. The Defendants have breached the contracts by failing to pay when demanded the amounts due under the contracts.

72. As a direct and proximate result of the aforementioned breaches, Action Mailing has incurred damages in the amount of $297,441.59.

WHEREFORE, Action Mailing demands judgment in its favor and against WJMA, SDW and ACI, jointly and severally, in the amount of $297,441.59, along with reasonable attorney's fees and the costs of this action.

### Count Three – Unjust Enrichment
### (All Defendants)

73. Action Mailing incorporates by reference all other averments in the Complaint.

74. Action Mailing prepared and mailed direct mailings which conferred a benefit on the Defendants.

75. The Defendants requested that Action Mailing prepare and mail direct mailings on their behalf, knowing that they would be enriched by those mailings and knowing that Action Mailing expected to be paid.

76. Defendants were enriched by the mailings through their receipt of their respective portions of the donations, compensation from those receipts, and the distribution of their political messages.

77. The Defendants should have reasonably expected to be required to compensate Action Mailing for the work done on behalf of the Defendants.

78. WJMA knew the estimated costs of the mailings it was ordering and that it was expected to pay for the mailings.

79. SDW knew that WJMA was making orders in its name and affirmatively approved, in writing, the payment of those orders out of escrow funds belonging to WJMA and SDW.

80. Defendants have retained the benefit conferred by Action Mailing without payment of its value.

81. The Defendants have been unjustly enriched in the amount of $297,441.59.

WHEREFORE, Action Mailing demands judgment in its favor and against the Defendants, jointly and severally, for restitution in the amount of $297,441.59, along with reasonable attorney's fees and the costs of this action.

### Count Four – Civil Conspiracy
### (All Defendants)

82. Action Mailing incorporates by reference all other averments in the Complaint.

83. The Defendants agreed among themselves to make false representations to Action Mailing for the purpose of defrauding Action Mailing and obtaining direct mailing services without paying for those services.

84. In furtherance of the Defendants' agreement, Mr. McCarthy and WJMA made numerous misrepresentations to Action Mailing to induce action mailing to perform direct mailing services prior to being compensated for past services.

85. Action Mailing and the Defendants entered into contracts by which Action Mailing would prepare and mail direct mailings on behalf of the Defendants.

86. A material term of the contracts required the Defendants to compensate Action Mailing for the mailings and postage.

87. The Defendants have breached the contracts by failing to pay when demanded the amounts due under the contracts.

88. As a direct and proximate result of the aforementioned conspiracy, Action Mailing has incurred damages in the amount of $297,441.59.

WHEREFORE, Action Mailing demands judgment in its favor and against the Defendants, jointly and severally, in the amount of $297,441.59, along with reasonable attorney's fees and the costs of this action.

### Count Six –Piercing the Corporate Veil
### (William J. McCarthy)

89. Action Mailing incorporates by reference all other averments in the Complaint.

90. Mr. McCarthy repeatedly misrepresented to Action Mailing that *he* would get caught up on payments and that *he* would "get back on track".

91. McCarthy knew or should have known that he would not get back on track and the misrepresentations were made to continue enriching himself at the expense of Action Mailing as long as possible. McCarthy admitted in emails with SDW that the only way to stay afloat was to continue rooking direct mail vendors like Action Mailing, as WJMA, McCarthy and SDW had done in the past.

92. Mr. McCarthy effectively disregarded the existence of WJMA (an entity that he owns) as an entity and inserted himself personally in the business dealings with Action Mailing. William J. McCarthy and Associates, as the name indicates, was nothing more than the alter ego of Mr. McCarthy.

93. While the orders were made on WJMA letterhead, the communications and orders were all with McCarthy and he was the one reaping the benefit of those orders (in addition to SDW and ACI) through the receipt of profits from the direct mailing campaigns.

94. Upon information and belief, neither WJMA, Mr. McCarthy, nor any of the other Defendants were financially solvent at the time that orders were placed. The Defendants did not have sufficient assets to pay or the goods and services they were ordering.

95. McCarthy knew that WJMA was and would be unable to pay for the services he'd already ordered or the services he was going to order in the future, yet he continued to make orders, promised they would be paid, then hid behind WJMA, SDW and various fictitious, unregistered entities.

96. WJMA is nothing more than a shield against Mr. McCarthy's creditors and a vehicle for the perpetration of a fraud against Action Mailing.

97. It would be fundamentally unfair to permit Mr. McCarthy to hide behind WJMA's corporate status and avoid the debts that he incurred with Action Mailing.

98. WJMA's corporate veil should be pierced such that Action Mailing can maintain its breach of contract and unjust enrichment actions directly against Mr. McCarthy.

99. Action Mailing has incurred damages in the amount of $297,441.59 for breach of contract and/or is entitled to restitution against Mr. McCarthy in that amount.

WHEREFORE, Action Mailing demands judgment in its favor and against William J. McCarthy, individually, in the amount of $297,441.59, along with reasonable attorney's fees and the costs of this action.

Respectfully submitted,

McNamee, Hosea, Jernigan, Kim,
Greenan & Lynch, P.A.


 /s/   Janet M. Nesse
Janet M. Nesse – Bar No. 25884


  /s/  Aaron D. Neal
Aaron D. Neal – Bar No. 79692
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
Tel.     301-441-2420
Fax      301-982-9450
jnesse@mhlawyers.com
aneal@mhlawyers.com

*Attorneys for the Plaintiff*

## Certificate of Service

I hereby certify that on this 21st day of February, 2020, the foregoing pleading was filed via CM/ECF and served electronically upon:

Andrew Biondi, Esq.
Jesse R. Binnall, Esq.
David A. Warrington, Esq.

  /s/  Aaron D. Neal
Aaron D. Neal – Bar No. 79692